KANKAKEE AND SENECA RAILROAD COMPANY ET AL.

v.

OWEN HORAN.

*Waters—Railroad Embankment—Injury to Reversionary Interest—Evidence—Instructions—Remittitur—Costs.*

1. In an action to recover damages to a reversionary interest in real estate, caused by an embankment obstructing a watercourse, evidence to show the depreciation in value of the land from such cause is admissible.

2. In the case presented, the bill of complaint filed by a defendant against the plaintiff in the United States Court, containing admissions against the complainant's interest, and a portion of the petition for a change of venue, were properly admitted in evidence.

3. An owner of land adjacent to a legal watercourse can not complain of an increased flow of water, caused by the digging of ditches and drains by the owners of lands bordering upon the same.

4. Where one obstructs the outlet of a natural watercourse, undertaking to provide another in its stead, he is bound to have the same of such dimensions as to anticipate and provide for any legal increase in the flow of water.

6. Where the court allows the appellee to remit part of the judgment and affirms as to the balance, the costs of the appeal are taxed against the appellee.

[Opinion filed May 25, 1889.]

APPEAL from the Circuit Court of Grundy County; the Hon. CHARLES BLANCHARD, Judge, presiding.

Mr. G. S. ELDRIDGE, for appellant.

The Kankakee & Seneca Railroad Company had the constitutional and lawful right to cross the Parker slough; and, if necessary, to change the course of the slough, if it did it in a manner prescribed by the statute. R. S., title Railroads, etc., Sec. 20, Par. 5; Angell on Watercourses, 6th Ed., Sec. 465b, 465c, 465d, and cases cited; Bellinger v. N. Y. C. Ry. Co., 23 N. Y. 42; Morrison v. B. & B. Ry. Co., 67 Me. 353; Morris v. Vt. Cen. Ry. Co., 28 Vt. 99; 1 Sutherland on Damages, 191; 3 Sutherland on Damages, 433; Babcock v. Ry.

Co., 9 Met. 553; Keithsburg, etc., Ry. Co. v. Henry, 79 Ill. 290; Stevens v. C., B. & Q. Ry. Co., 57 Ill. 675; Menkeiss v. Ry. Co., 72 Mo. 514; C. & E. Ry. Co. v. Loeb, 8 Ill. App. 627; I. C. Ry. Co. v. Bethel, 11 Ill. App. 17, and cases cited; Ellet v. St. Louis, etc., Ry. Co., 76 Mo. 518; Houston Ry. Co. v. Parker, 50 Tex. 530.

The injuries complained of in the building of the trestle at the Parker slough, and on the plaintiff's east line, etc., are in no sense permanent injuries, because, conceding there was a diversion of the water onto the plaintiff's land from the Parker slough, the plaintiff could have easily remedied it. He sues for an injury to his reversionary interest. He has, as yet, sustained none. He was not in possession at the time of the injury complained of, and can only maintain an action when he shall acquire the possession. He had not, at the commencement of this suit, the actual possession or the right thereto. He has no right to assume that upon the reversion of the estate, the state of things complained of will exist, unless they are of such an obviously permanent character that they are immovable or irremediable and can not be relieved against. This suit is altogether premature, in any view. The suit by Frank Horan is all-sufficient. A suit for damages to a reversionary interest presupposes, of course, that some permanent structure or obstruction has been erected or placed somewhere off his premises, which the plaintiff has no lawful right to remove or interfere with, or that some obstruction has been erected or placed on his premises, or other damaging thing has been done upon his premises of which he can not be relieved. For a mere diversion of water upon the plaintiff's land, which might be provided against, the plaintiff, if in possession, may dig a ditch on his own land and relieve himself, and what it costs to do it may be recovered for, or he may sue and recover what it would cost him to relieve himself from the overflow.

In this case there was no occasion to remove any obstruction, either on or off the plaintiff's premises. All he was required to do was to provide means for the escape of the water, which might have been done at a comparatively trifling

expense, and this is the limit of his recovery for such injuries. C., R. I. & P. R. R. Co. v. Cary, 90 Ill. 514; Field on Damages, pp. 592–602, Secs. 734, 737, 738, 748, and cases cited; 1 Hilliard on Torts, 608, Sec. 18; 1 Sutherland on Damages, 193; 3 Sutherland on Damages, 433; Miller v. St. L. & C. R. R. Co., 31 Mo. 262; Seely v. Alden, 61 Pa. St. 302; Mumford v. Oxford Ry. Co., 36 Eng. Law and Eq. R. 850; Fisher v. Thirkill, 21 Mich. 1, and cases cited; Pinney v. Berry, 61 Mo. 359, and cases cited; Cumberland, etc., Co. v. Hitchings, 65 Me. 140; Bathishill v. Reed, 37 Eng. Law and Eq. R. 317; Luther v. Winnisinnet, 9 Cush. 171; Brower v. Chandler, 3 Wis. 46; Uline v. N. Y. Cen. & H. R. R. R., 101 N. Y. 98, and cases cited.

The record shows that the jury, under the instructions of the court, assessed the damages at one-half of the present value of the farm, placing the value at the maximum fixed by the most enthusiastic witness—$30 for 240 acres—$7,200! as if the plaintiff were in possession and no outstanding tenancy in Frank Horan. The plaintiff is an old man, seventy years of age and upward, and his son in possession under a tenancy for life. The only measure of damages could be the damages to the reversionary interest, whatever that might be worth, and not the depreciation in the present value of the land. Sutherland on Damages, Vol. 3, p. 392; Randall v. Cleveland, 6 Conn. 328; Van Dusen v. Young, 29 N. Y. 9; Shadwell v. Hutchinson, 2 B. & Ad. 97; Dutro v. Wilson, 4 Ohio, 101; Larkin v. Goodsal, 2 Peake, 15; 1 Ad. on Torts, 315; Baxter v. Taylor, 4 B. & Ad. 72; Funkman v. Newman, 11 Ad. & E. 40; Harder v. Harder, 26 Barb. 409; Agate v. Lowenstein, 6 Daly, 291.

Messrs. S. C. STOUGH and R. M. WING, for appellee.

The depreciation in the market value of property arising from the infliction of a permanent injury upon it, is the proper and legitimate measure of damages to the owner. Ill. Cent. R. R. Co. v. Grabill, 50 Ill. 241; The Chicago & Ia. R. R. Co. v. Baker, 73 Ill. 316; C., B. & Q. R. R. Co. v. McGinnis, 79 Ill. 269; C., M. & St. P. R. R. Co. v. Hall, 90 Ill. 42; K. &

S. R. R. Co. and C., I., St. L. & C. Ry. Co. v. Horan, 22 Ill. App. 145.

The market value of property is a present and subsistent right in the owner, and this value is capable of proof other than by actual sale of the property. Any other rule of law would be manifest injustice to the owner, and, in this case, a denial of all remedy to the plaintiff until he sold his farm; and then, by virtue of another principle of law, he would be remediless for the want of any interest or ownership in it. Ottawa Gas Light Co. v. Graham, 38 Ill. 73; I. C. R. R. Co. v. Grabill, 50 Ill. 241; C., R. I. & P. Ry. Co. v. Cary, 90 Ill. 514; Troy v. Cheshire R. R. Co., 23 N. H. 102.

LACEY, P. J. This case, in its facts, is similar to the case of the same appellants v. Frank Horan, except the latter sued to recover damages for loss of crops, he being a tenant of appellee. In this case the suit was brought by appellee to recover for injury to his reversionary interest to his 240 acres of land. For a full statement of facts and for many of the legal questions to be passed upon in this case, the above case of Frank Horan, 23 Ill. App. 259, is referred to. See, also, same appellants v. Frank Horan, 17 Ill. App. 650; also the case now under consideration, 22 Ill. App. 145.

The objections made by appellants to the admissibility of certain evidence touching the measure of appellee's damages are, as we think, not well taken. It was proper to show the depreciation in value of the land caused by the overflow thereof through the wrongful act of appellants in the improper construction of the railroad. As to the introduction of certain maps by appellee, it may be said that the jury were the judges. from the evidence, whether they were correct or not. The admission in evidence of a portion of appellants' petition for change of venue was not error, as has been decided by this court heretofore. The bill of complaint of one of the appellants, filed against appellee in the United States District Court of Northern Illinois, contains admissions against the interest of appellants, and was properly admissible.

The demurrer of appellee to the bill is not an admission of

the truth of the bill, except for the mere purposes of the demurrer. Appellants complain that the declaration is not sufficient, and that judgment in this case should have been arrested on account of it, but, after an examination of the declaration, we find it in the usual form, and according to approved precedents, and hold it sufficient.

It is complained that the tenancy of Frank Horan of the land in question was of some value, and should have been deducted from the damages to the reversion, but the evidence shows that the tenancy, if it can be called one, was only one at will, and was of no value. The appellee was entitled to immediate possession at any time he chose to call for the land; it was only damages to the crops that Frank Horan recovered, which he planted from time to time, and which were his by gift from his father.

It is strenuously insisted by counsel for appellants that the court below erred in not allowing him to introduce certain mortgages given by one of the appellants, the Kankakee road, to the other, as being evidence tending to rebut appellee's testimony to the effect that the Kankakee Company had no money, and could not build the railroad in question.

We think there was no error in rejecting it. The evidence, as we heretofore held, was fully sufficient to raise a *prima facie* case that the appellant, the Cincinnati Company, which we so call for brevity, was the chief builder—or, at least, one of them—of the road in question, and the Kankakee Company, the other appellant, only a mere agency, its name being used by the Cincinnati Company for some convenient purpose of its own. The introduction of these mortgages would in no wise rebut such *prima facie* case. On the other hand, the fact that, while appellants had ample proof in their possession to settle the question, they failed to introduce it, but attempted to overthrow the evidence of appellee on that point by such an insignificant circumstance, would make the presumption stronger that the Cincinnati Company was the real builder of the road.

The mortgages were evidently only another link in the chain of devices to use the name of the Kankakee Company

to build the road, the object of which the proof does not plainly disclose. But evidently the Cincinnati Company was the main builder of the road, possessed and operated it.

The four instructions given on the part of the appellee are objected to by appellants' counsel. We have carefully examined the same and find them substantially correct, and not obnoxious to the objections made to them. We have heretofore passed on most of the questions raised by them, and appellants' objections thereto. Nor do we see any error committed by the court in the several modifications of the appellants' instructions; nor in refusing the defendants' refused instructions offered by appellants. We do not deem it necessary to particularly mention any of them except the 13th refused instruction. It was as follows:

"13. If the jury find, from the evidence, that the outlet for the water of the Parker slough, constructed on or near the east line of Bertrand D. Parker's land, afforded as good facilities for the discharge of the water running through said slough as were afforded by said slough before said railroad was constructed and the course of said watercourse interfered with, then neither of said defendants is liable in this action for any damages relating to the plaintiff by waters flowing from said Parker slough over the premises occupied by reason of the trestle and opening at said locality. And if the jury find, from the evidence, that, in consequence of the artificial ditches, cuts and other excavations made by neighboring land owners since the construction of the railroad, the amount of water discharged into the Parker slough, and which flowed therefrom upon the premises of the plaintiff, was increased, and exceeded in amount the waters which flowed through said slough before the railroad was constructed and said watercourse interfered with, neither of the defendants in this case is liable for any damages done by said excessive flowing of water over said slough over the premises occupied by the plaintiff, providing nothing was done in the construction of the railroad, or in connection therewith, to diminish the flow of water through the Parker slough, or to diminish the capacity of the Parker slough to convey water, or to increase the flow of water from the Parker slough onto the plaintiff's land."

While we do not think that the evidence, fairly considered, would justify the instruction, we do not think the proposition good as a legal question.

It, in substance, tells the jury that the appellants, when fixing the culvert for the passage of the water of the Parker slough, a natural watercourse, were only bound to construct it so that it would become no obstruction to the water then flowing into it, but as to any increase of water caused by the drainage into it by people along the course of the slough, the appellants would not be liable, though the culvert were not sufficient to admit of the passage of such waters. We do not subscribe to this doctrine. The Parker slough was a watercourse, and it was the legal right of any one along its line for miles above the railroad, where the waters naturally shed toward the slough, to drain into it, and no one below, owning land along the slough, would have any legal remedy against such person so draining water into the slough above them for any damage done to his inheritance by means of an increased flow of water caused thereby. In other words, the slough was a legal watercourse for the drainage of all the land, the natural tendency of which was to cast its surplus water caused by the falling of rain and snow into it, and this whether the flow was increased by artificial means or not. It would seem legitimately to follow that the railroad company would be bound, in providing a passage way for the slough, to anticipate and provide for any such legal increase of the water flow. If it did not, it was doing a wrong and a legal injury to any one situated like the appellee, who was damaged in consequence of a failure on its part to do its duty. There was no proof of any water being illegally cast into the slough, or by any one who had not a right to drain into it. It may be that the provision nullifies the point of the instruction in regard to the increased flow of water supposed to be caused by draining into it. If it does, then the instruction had no particular meaning, other than if the railroad did not cause the damages by obstructing the passage of water it would not be liable; and this proposition was contained in nearly all the instructions. If the proviso is understood to apply to the condition of the

slough at the time the culvert was built, then our criticism will hold good.

The appellee recovered a judgment in the court below for the sum of $7,200, from which this appeal is taken. Since the cause came into this court the appellee has entered his motion herein, to be allowed to remit of the said verdict the sum of $3,200, which motion is allowed by this court, and we are requested to only affirm the judgment of the court below for the sum of $4,000. Finding no error in the record upon which a reversal can be had, and being satisfied with the judgment after the *remittitur*, the judgment of the court below is affirmed for the sum of $4,000, and reversed as to the balance.

But in such case the costs of the appeal must be taxed against the appellee, which we so order to be done. Warner v. Snell, 91 Ill. 472.

*Judgment affirmed for $4,000.*